**WILLIAM HENRY v. THOMAS GAFFNEY**

**ELIAS SAMUEL v. THOMAS GAFFNEY**

**PETER PETERSEN v. THOMAS GAFFNEY**

**WILLIAM ANDREAS v. THOMAS GAFFNEY**

**JACOB CORNELIUS v. THOMAS GAFFNEY**

**JOSEPH DAILY v. THOMAS GAFFNEY**

**JOSEPH JACOBS v. THOMAS GAFFNEY**

**ABRAHAM LUCAS v. THOMAS GAFFNEY**

September Term, 1926

Nos. 42, 43, 44, 45, 46, 47, 48, 49

District Court of the Virgin Islands

Frederiksted Sub-Judicial District
St. Croix

September 16, 1926

D. HAMILTON JACKSON, *for plaintiffs*
D. NOLL, *for defendant*

WILLIAMS, *Judge*

The above entitled causes came on for hearing on the 15th day of September, 1926, on appeal from the Police Court of Frederiksted, plaintiffs appearing in person and by their counsel, D. Hamilton Jackson, Esquire, and defendant appearing also, both in person and by his counsel, D. Noll, Esquire.

That it was agreed between the parties that all of the above entitled causes should be heard and tried as one

case, as the same points were involved in each, on which agreement the case proceeded to trial.

The defendant, Gaffney, is the owner of several estates in the west end of the Island, among which is an estate known as "Little Fountain." The plaintiffs are renters of small tracts of land and are known in this jurisdiction as "squatters." That sometime during the latter part of 1923 and early part of 1924 various plaintiffs entered into an arrangement with the defendant whereby they were to acquire the right to cultivate parcels of land on the defendant's said estate, "Little Fountain." That it appears that the transaction was carried out principally through an agent of superintendent of defendant, named Brown, a native of the Island. That according to his testimony and that of the defendant, Gaffney, and several squatters who went upon the property about the same time, the parcels of land were designated at the time of rental, for all of which designated land an annual payment of $8 per acre was to be made. On the other hand, the several plaintiffs who testified — and it is assumed that the others would have testified as they did — asserted that they were to pay, not for the whole piece of ground marked out, but only on so much as was actually put into cane cultivation, a measurement of which was to be made each year as the crop was reaped. All of the plaintiffs, of course, were interested parties. It appears from the evidence that most of them had not made a very profitable venture, but in fact, according to the claim of defendant, they owed money to him. It appears from the testimony that the witness, Brown, who was at the time of the rental of the said land the superintendent of defendant, that he left the employment of defendant some several years ago, as a result of a disagreement, which disagreement still remains between them; that he is not now in the employ of defendant, and it appears that there is no reason why

he should testify falsely as to the agreement made, largely through him, in accordance with instructions from defendant, with the various "squatters." In fact, it would seem that as there was a continuing disagreement between him and the defendant, he might be more favorable to the plaintiffs, people of his own nativity and with whom it might be supposed that he would have somewhat of a community of interest. At any rate, it does not appear that he has any reason to testify falsely. He testified that he remembered the various pieces of land assigned to these people because he had been going over the estate each day covering a long period of time and was perfectly familiar with all of the parties and tracts of land held by them; that he himself saw to the marking out of the land when they took possession thereof and went down recently with the parties to show and point out the boundaries of the various parcels, which was, in fact, done by him. His testimony was contradicted, but not impeached. Several "squatters" were called to testify that they took their parcels about the time the various plaintiffs took theirs and that they took the same through superintendent Brown and understood that they were to pay $8 per year, for the land actually taken into possession by them, and not alone for the land put into cane cultivation each year. They said they were perfectly clear about this at the time of taking possession, albeit they knew nothing about the terms of the other parties. It is not conceived, and it has not been shown, that they have any interest in swearing to a [falsehood?]. So far as the record shows, they were not obliged to come in and testify at all, and would profit in no way by false oaths, but were only interested in telling the facts as known by them. The method of rental to them corroborates in every particular the testimony of the defendant and Brown.

■ ■ Weighing the testimony, as above narrated, it

110

would seem that the preponderance of the evidence would be in favor of defendant, upon whom I am inclined to the opinion that the burden rested of showing the amount due for rental. The action was for the amount of money in the defendant's hands, received by him from the factory on account of cane delivered by them to the factory. It is not entirely clear from the testimony whether or not he was to deduct the rental from the amount received, although I assume that was the object of his receiving the proceeds of the sale, rather than the various tenants. But I have assumed, for the purpose of the case, which is not to be taken as a precedent, that the burden was upon the defendant to so show, and have found that, tested by this rule, the defendant has met it by showing a preponderance of the testimony to the arrangement above set forth.

For these reasons the Findings of Fact and Conclusions of Law — which have been heretofore filed — have been reached.